IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

LOUISE ARNOLD, Administrator
for the Estate of Roderick McDaniel                                         PLAINTIFF

v.                                         Case No. 1:21-cv-01057

OFFICER CHARLES MCCLINTON;
SHERIFF MIKE LOE; and COLUMBIA
COUNTY, ARKANSAS                                                          DEFENDANTS

**ORDER**

Before the Court is Defendants Columbia County, Arkansas, Mike Loe, and Charles McClinton's Motion for Summary Judgment. ECF No. 35. Plaintiff Louise Arnold, Administrator for the Estate of Roderick McDaniel, has responded. ECF No. 42. Defendants have replied to Plaintiff's response. ECF No. 46. Thus, the matter is ripe for the Court's consideration.

**I. FACTUAL BACKGROUND**

The following facts are undisputed. On November 21, 2018, a bulletin for Roderick McDaniel was issued to all officers of the Columbia County Sheriff's Office, alerting the officers that McDaniel was wanted in connection with a murder committed the day before. McDaniel was reported to be driving a white SUV. At approximately 1:00 a.m. on November 21, 2018, Defendant McClinton, a deputy with the Columbia County Sheriff's Office, noticed a white SUV parked and idling in the parking lot of a Magnolia, Arkansas apartment complex. Defendant McClinton parked his patrol vehicle behind the SUV and approached the driver's side door. Another officer, who is not named in this lawsuit, arrived shortly thereafter as backup.[1]

---

[1] This officer's name is Officer J. Skinner.

Once Defendant McClinton was at McDaniel's driver's side window, McDaniel partially rolled the window down. McDaniel informed Defendant McClinton that his name was Roderick McDaniel. After giving Defendant McClinton his name and while Defendant McClinton wrote McDaniel's information down, McDaniel began reversing the SUV. When reversing, McDaniel collided with Defendant McClinton's patrol vehicle, which was still parked behind the SUV. Defendant McClinton instructed McDaniel to stop multiple times, and when McDaniel did not, Defendant McClinton fired one round into the driver's side window, hitting McDaniel in the chest. McDaniel died from this shot.

Defendants have filed several multimedia files under seal with the Court. The files include the following: footage from Defendant McClinton's patrol vehicle, footage from Defendant McClinton's body camera, footage from Officer J. Skinner's patrol vehicle, footage from Officer J. Skinner's body camera, audio from Defendant McClinton's interview with the Arkansas State Police, audio from Officer J. Skinner's interview with the Arkansas State Police, Columbia County radio traffic recordings, and dozens of photographs from the scene. The body camera footage confirms the above-discussed undisputed facts and depicts the moments immediately following the shooting. In the footage, Defendant McClinton can be heard saying to other officers present at the scene: "I don't know why I shot him, I really don't"; "Why did I shoot him?"; and "I didn't have no reason to shoot him." Following one of these admissions, a fellow officer can be heard encouraging Defendant McClinton to turn off his body camera before making any further statements.

The parties dispute several facts. First, the parties dispute whether, at the time of the shooting, McDaniel was still reversing the SUV or was moving forwards towards Defendant McClinton. Plaintiff maintains that McDaniel was still reversing at the time that he was killed,

while Defendants argue that McDaniel was moving towards Defendant McClinton, such that Defendant McClinton shot McDaniel out of fear for his own safety.[2] Plaintiff also disputes Defendants' statement that "[a] loaded handgun was located in or around McDaniel's hand, where he had apparently drawn it from his waistband or pocket at or around the time he was shot. ECF No. 37, at 3; ECF No. 43, at 2.[3]

## II. PROCEDURAL BACKGROUND

On November 5, 2021, Plaintiff filed the instant action. ECF No. 2. In her complaint, Plaintiff named Defendants McClinton and Loe in their individual and official capacities, alleging that they violated the following of McDaniel's rights: to be free from unreasonable searches and seizures; to due process of law; to be free from unjust punishment; to be free from the use of deadly force; equal protection of the law; to be free from racial discrimination; and to be free from "arbitrary governmental activity which shocks the conscience of a civilized society." ECF No. 2, at 3-4. Plaintiff brought these claims pursuant to 42 U.S.C. § 1983, but also cited 42 U.S.C. §§ 1981, 1985, alleging briefly that Defendants McClinton and Loe deprived McDaniel of his privileges and immunities. ECF No. 2.

Plaintiff also brought a municipal liability claim against Defendant Columbia County, alleging that Defendant Columbia County "failed to provide policy, guidance, training, and proper supervision and discipline to Charlie McClinton." ECF No. 2, at 5. Plaintiff further alleged that Defendant Columbia County is aware of its officers' "code of silence" but has failed to eliminate that "code," allowing "officers [to] act unconstitutionally without fear of discipline from their

---

[2]It is undisputed that the SUV *did* eventually roll forward and collide with other parked vehicles. However, it is the moments immediately before the shooting that are in dispute.

[3]Plaintiff disputes almost all of Defendants' Statement of Indisputable Material Facts. *See* ECF No. 43. However, the Court outlines only those disputes relevant to the instant order.

superiors." ECF No. 2, at 5.  Finally, Plaintiff brought a claim pursuant to the Arkansas Civil Rights Act (ACRA), a claim pursuant to Arkansas Code Annotated § 16-118-107, [4] as well as state-law tort claims of assault and battery, felony aggravated assault, and outrageous conduct. ECF No. 2, at 6-7.[5]

On March 7, 2022, Defendants filed a motion to dismiss and asked the Court to dismiss Plaintiff's complaint in its entirety because it "was not properly and timely served on the Defendants" or, alternatively, was "time-barred."  ECF No. 13.  The Court granted that motion in part and denied that motion in part, dismissing Plaintiff's assault and battery and felony aggravated assault claims after finding that they were time-barred.  ECF No. 28.  Following the Court's order, Plaintiff's 42 U.S.C. § 1983, ACRA, Ark. Code Ann. § 16-118-107, and outrageous conduct claims remained.

Now, Defendants seek summary judgment on these remaining claims.  In their view, Defendants McClinton and Loe (insofar as Plaintiff sues them in their individual capacities) are entitled to qualified immunity, Defendant Columbia County is entitled to "statutory immunity," and Plaintiff's claims against Defendants McClinton and Loe in their official capacities are "legally identical and redundant" to Plaintiff's claims against Defendant Columbia County.  *See* ECF Nos. 35, 36.[6]

---

[4]Arkansas provides a civil cause of action for those injured or killed "by reasons of conduct of another person that would constitute a felony under Arkansas law."  Ark. Code Ann. § 16-118-107.

[5]Plaintiff's complaint does not clearly articulate which individual-capacity claims are against which defendant.  *See* ECF No. 2.  After reviewing Plaintiff's complaint, as well as filings subsequently submitted by both parties, the Court construes Plaintiff's complaint as alleging a Fourth Amendment claim, brought pursuant to § 1983, against Defendants McClinton and Loe in their individual capacities, an ACRA claim against Defendants McClinton and Loe in their individual capacities, and state-law tort claims of assault and battery, felony aggravated assault, and outrageous conduct against Defendant McClinton in his individual capacity.  *See* ECF Nos. 2, 44.

[6]In support of Defendants' argument that Defendant Columbia County is entitled to "statutory immunity," Defendants cite Ark. Code Ann. § 12-9-301, which provides, as is relevant here, that all counties in the State of Arkansas are "immune from liability and from suit for damages except to the extent that they may be covered by liability insurance."

Plaintiff responded, adjusting her first claim and characterizing it as a Fourth Amendment, unreasonable seizure claim against Defendants McClinton and Loe. *Compare* ECF No. 44, at 3 ("She alleged claims against Deputy McClinton and Sheriff Mike Loe under 42 U.S.C. § 1983, for violation of the decedent's right to be free from unreasonable seizure.") *with* ECF No. 2, at 3-4 (alleging that Defendants McClinton and Loe violated the following of McDaniel's rights: to be free from unreasonable searches and seizures; to due process of law; to be free from unjust punishment; to be free from the use of deadly force; equal protection of the law; to be free from racial discrimination; and to be free from "arbitrary governmental activity which shocks the conscience of a civilized society").[7] Plaintiff argues that there are genuine issues of material fact precluding summary judgment because, although Defendant McClinton declared "that he 'certainly and urgently believed' the decedent was trying to run him down or escape," the video of Defendant McClinton's interaction with McDaniel "belies" Defendant McClinton's declaration. ECF No. 44, at 6. Plaintiff also contends that, insofar as she brings a § 107 claim against Defendant McClinton, there is a jury question as to whether Defendant McClinton "committed at least the Class C felony of manslaughter," and that it is inapposite that Defendant Loe was not present at the scene of the shooting because her claims against Defendant Loe are based on his failure to train ECF No. 44, at 11-12.

Defendants replied to Plaintiff's response. ECF No. 46. In that reply, Defendants argue that Plaintiff relies on self-serving allegations which are insufficient to survive a motion for summary judgment. Defendants further note that Plaintiff "did not substantively respond to" Defendants' argument that Defendants Loe and Columbia County are entitled to summary judgment, contending that "Plaintiff does not even allege personal involvement by former Sheriff

---

[7] Plaintiff appears to abandon her 42 U.S.C. §§ 1981, 1985 claims against Defendants McClinton and Loe. *See* ECF No. 44.

Loe and does not allege any objectionable County policies or customs." ECF No. 46, at 4. For the following reasons, the Court finds that Defendants' motion for summary judgment should be granted in part and denied in part.

## II. DISCUSSION

The familiar summary judgment standard dictates that the Court should grant a motion for summary judgment where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Erickson v. Nationstar Mortg., LLC*, 31 F.4th 1044, 1047-48 (8th Cir. 2022) (citation omitted). "A fact is 'material' if it may 'affect the outcome of the suit.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "The movant 'bears the initial responsibility of informing the district court of the basis for its motion,' and must identify 'those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact.'" *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). In response, the nonmoving party "must respond by submitting evidentiary materials that set out 'specific facts showing that there is a genuine issue for trial.'" *Id.* (citation omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Banks v. Deere*, 829 F.3d 661, 665 (8th Cir. 2016) (citation omitted).

"[T]his Court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists." *Burghardt v. Ryan*, 560 F. Supp. 3d 1093, 1103 (N.D. Ohio Sept. 17, 2021). It is the function of the jury, not the Court, to make credibility determinations, weigh evidence, and draw inferences from the facts. *Reeves v.*

*Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). Because Plaintiff brings several different types of claims, the Court will address each type in turn.

### A. Individual Capacity Claims

Defendants McClinton and Loe argue that they are entitled to qualified immunity on Plaintiff's individual capacity claims against them. "Qualified immunity shields government officials from liability in a § 1983 action unless the official's conduct violates a clearly established constitutional or statutory right of which a reasonable person would have known." *Estate of Morgan v. Cook*, 686 F.3d 494, 496 (8th Cir. 2012) (citation omitted). "The test for qualified immunity is twofold: (1) whether the facts alleged, taken in the light most favorable to the injured party, show that the officer's conduct violated a constitutional right; and (2) whether the constitutional right was clearly established at the time of the deprivation so that a reasonable officer would understand his conduct was unlawful." *Nance v. Sammis*, 586 F.3d 604, 609 (8th Cir. 2009). "Courts can 'exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first.'" *Glow In One Mini Golf, LLC v. Walz*, 37 F.4th 1365, 1373 (8th Cir. 2022) (citation omitted). "[U]nless we find both that the plaintiff has stated a plausible claim for violation of a constitutional or statutory right and the right was clearly established at the time of the infraction, the defendant-officer is entitled to qualified immunity." *City Union Mission, Inc. v. Sharp*, 36 F.4th 810, 817 (8th Cir. 2022). Stated differently, "[i]f the answer to either question is no, then a defendant is entitled to qualified immunity." *Burbridge v. City of St. Louis*, 2 F.4th 774, 780 (8th Cir. 2021) (citation omitted).

### 1. Defendant McClinton

Looking to the first prong of the qualified immunity analysis, the Court must determine whether a seizure occurred and whether that seizure was objectively reasonable under the

7

circumstances. *Williams v. City of Burlington*, 516 F. Supp. 3d 851, 862 (S.D. Iowa Jan. 29, 2021). "[T]here can be no question that apprehension by the use of deadly force is a seizure subject to the reasonableness requirement of the Fourth Amendment." *Tennessee v. Garner*, 471 U.S. 1, 7 (1985). Thus, here, it is clear that a seizure occurred, and the Court is tasked with determining whether that seizure was reasonable. *Cf. Cordova v. Aragon*, 569 F.3d 1183, 1188 (10th Cir. 2009) (explaining that "we must 'slosh our way through the fact-bound morass of "reasonableness"'" (quoting *Scott v. Harris*, 550 U.S. 372, 383 (2007)). This reasonableness analysis does not account for "the officer's underlying intent or motivation," *McCoy*, 342 F.3d at 848, but instead, judges the officer's actions "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Laney v. City of St. Louis*, 56 F.4th 1153, 1156 (8th Cir. 2023) (citation omitted).

At the time that Defendant McClinton shot McDaniel, Defendant McClinton knew the following facts: a man named Roderick McDaniel was wanted in connection with a murder committed one day prior; the man in the white SUV was named Roderick McDaniel; after Defendant McClinton collected McDaniel's information, McDaniel rolled up his driver's side window and reversed, hitting Defendant McClinton's parked patrol vehicle; and Defendant McClinton yelled at McDaniel to "stop." The parties dispute what happened next. Defendant McClinton justifies the shooting by alleging that McDaniel put him in imminent danger by "attempting to kill or seriously injure" him, "attempt[ing] vehicular flight with reckless disregard for the safety of others," and "gunning the vehicle forward toward [him] in a desperate attempt to flee apprehension." ECF No. 46. However, according to Plaintiff, McDaniel's SUV "was still in reverse when McClinton fired the shot through the driver's side window" and Defendant

McClinton "was off to the side of the vehicle, and not in any danger of being run down by it." ECF No. 44, at 6.

Where the summary judgment record contains video evidence that "utterly discredit[s]" the nonmovant's version of events, the Court is not required to adopt that version. *Scott*, 550 U.S. at 378-80. Here, the Court has carefully reviewed the videos from the night of the shooting. Those videos are, at best, unclear as to whether McDaniel was moving forward towards Defendant McClinton when Defendant McClinton shot him. The footage does not conclusively resolve the parties' factual dispute. *Cf. Aguirre v. City of San Antonio*, 995 F.3d 395, 410-11 (5th Cir. 2021) ("When video evidence is ambiguous or in fact supports a nonmovant's version of events . . . the modified rule from *Scott* has no application." (citations omitted)).

Whether McDaniel was moving towards Defendant McClinton (or any other officer on the scene) is material to the determination of whether Defendant McClinton violated McDaniel's constitutional rights. "The act of fleeing itself does not create [an immediate threat to an officer's safety]." *Bolger v. United States*, No. 3:20-cv-3052, 2022 WL 908500, at *6 (W.D. Ark. Mar. 28, 2022). "This is the case even where the suspect flees in a vehicle." *Wilson v. Koppel*, No. 4:15-cv-00476, 2018 WL 1251929, at *4 (E.D. Mo. Mar. 12, 2018) (citation omitted). The Court finds *Wilson v. Koppel* to be particularly instructive. In *Wilson*, the victim, who was suspected of shoplifting, fled from police in his vehicle, and the officer shot the victim as he was fleeing. The victim later sued, bringing a Fourth Amendment excessive force claim pursuant to § 1983. At the summary judgment stage, the parties disputed whether, at the time of the shooting, the fleeing victim was driving his vehicle *toward* the officer such that the officer had probable cause to believe that he was in imminent danger. The court denied summary judgment, explaining that "[b]ecause the dash cam video [did] not conclusively show whether [the fleeing suspect presented an

imminent danger to the officer or others in the vicinity], [the defendant-officer] [was] not entitled to qualified immunity based on the record before the Court." *Wilson*, 2018 WL 1251929, at *4.

Similarly, in *Sigley v. City of Parma Heights*, the court determined that factual disputes precluded summary judgment where the parties disputed whether the fleeing victim was moving toward the officer such that the officer "had probable cause to believe that [the fleeing suspect] posed a significant threat of death or serious physical injury to others." 437 F.3d 527, 536 (6th Cir. 2006). In addition to *Wilson* and *Sigley*, other courts—including the United States District Court for the Western District of Arkansas—have denied a defendant's motion for summary judgment where it was unclear whether the victim "'was fleeing arrest at the time that he was shot rather than engaging' in conflict with the [officers]" because resolving that dispute is a job properly reserved for the jury. *Bolger v. United States*, No. 3:20-cv-3052, 2022 WL 908500, at *6 (W.D. Ark. Mar. 28, 2022) (citation omitted); *see also Agnew v. Cater*, No. 3:18-cv-50035, 2022 WL 540763, at *10 (N.D. Ill. Feb. 23, 2022) (finding summary judgment inappropriate where parties disputed whether officers were in path of fleeing suspect's moving vehicle).

In addition to disputing the direction in which the SUV was moving at the time of the shooting, Plaintiff also emphasizes the fact that immediately after the shooting, Defendant McClinton said things like "I don't know why I shot him, I really don't"; "Why did I shoot him?"; and "I didn't have no reason to shoot him." Although consideration of these comments are not necessarily helpful to the Court's *objective* reasonableness analysis, *see, e.g.*, *Laney*, 56 F.4th 1156, the Supreme Court has previously explained that "in assessing the credibility of an officer's account of the circumstances that prompted the use of force, a factfinder may consider, along with other facts, evidence that the officer may have harbored ill-will toward the citizen," *Graham*, 490 U.S. at 399 n.12. Defendant McClinton's post-shooting statements *are* relevant to the jury's

10

determination of his credibility (and the credibility of his story that he feared for his own safety). Similarly, Defendant McClinton emphasizes the fact that McDaniel was, at the time of the shooting, wanted in connection with murder—a violent felony offense—and that a gun was found in his vehicle after the shooting. ECF No. 37, at 3 (alleging that "[a] loaded handgun was located in or around McDaniel's hand, where he had apparently drawn it from his waistband or pocket at or around the time he was shot").

Ultimately, to determine whether Defendant McClinton committed a constitutional violation when he employed deadly force against McDaniel, the Court would have to weigh the evidence, assess the parties' credibility, and resolve important factual disputes. *Cf. Reeves*, 530 U.S. at 150. Because this is a job properly reserved for a jury, here, as in *Wilson*, *Sigley*, *Bolger*, and *Agnew*, the Court finds that factual disputes preclude a determination of whether Defendant McClinton committed a constitutional violation.

Defendant McClinton is nevertheless still entitled to qualified immunity, however, if the Court finds that, at the time of the shooting, the law was not clearly established. *See Burbridge*, 2 F.4th at 780. "To be clearly established, '[t]he contours of the right must be sufficiently clear that a reasonable office[er] would understand that what he is doing violates that right.'" *Bolger*, 2022 WL 908500, at *8 (alteration in original) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). The inquiry is particularized to the facts at hand, but "plaintiff 'does not have to point to a nearly identical case on the facts for the right to be clearly established.'" *Id.* (citation omitted). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Brosseau*, 543 U.S. at 199 (citation omitted).

Federal courts, including the United States District Court for the Western District of Arkansas, have found that, in as early as 2015, it was clearly established that it is unreasonable to use deadly force against a suspect merely for fleeing, even when that flight is via automobile. *See, e.g.*, *Bolger*, 2022 WL 908500, at *8; *Wilson*, 2018 WL 1251929, at *4. Thus, the Court does not need to conduct a lengthy, independent analysis of the state of the law in 2018 and relies on *Bolger* and *Wilson* to find that as of November 2018, it was clearly established that shooting a suspect like McDaniel merely for fleeing from arrest was unlawful. Ultimately, the Court denies Defendant McClinton's motion for summary judgment based on qualified immunity, leaving it up to a jury to determine whether Defendant McClinton violated that clearly established law. For these reasons, summary judgment on Plaintiff's Fourth Amendment and ACRA claims against Defendant McClinton in his individual capacity should be denied.[8]

Plaintiff also brings a claim against Defendant McClinton in his individual capacity pursuant to Arkansas Code Annotated § 16-118-107. Plaintiff's complaint reads, "Plaintiff have been the victims of common law assault and battery, as well as felony aggravated assault . . . as well as a victim of a felony as defined by Ark. Code [A]nn. Section 16-118-07 [sic]." ECF No. 7. In their motion for summary judgment, Defendants argue that because "the elected prosecuting attorney announces that he considers [Defendant McClinton's] conduct justified and will not even charge the individual," Plaintiff's § 107 claim against Defendant McClinton fails as a matter of law. ECF No. 36, at 10.

---

[8] "[T]he ACRA prohibits persons, acting under color of state law, from depriving any person of any rights, privileges, or immunities secured by the Arkansas Constitution." *Estate of Brown v. West*, No. 3:20-cv-00099, 2022 WL 963664, at *7 (E.D. Ark. Mar. 30, 2022). "[T]he Arkansas Supreme Court has stated that Article 2, § 15 of the Arkansas Constitution [(or ACRA)] is 'virtually identical to the Fourth Amendment' and will be interpreted 'in the same manner as the United States Supreme Court interprets the Fourth Amendment.' As a result, this Court determines that its analysis of [Plaintiff's] federal constitutional claims under § 1983 is equally applicable to the state constitutional claims under the ACRA." *Id.* (quoting *Rainey v. Hartness*, 5 S.W.3d 410, 415 (Ark. 1999)).

The Court's resolution of this claim turns on Plaintiff's failure to respond to Defendants' motion for summary judgment with "evidentiary materials that set out 'specific facts showing that there is a genuine issue for trial.'" *Torgerson*, 643 F.3d at 1042 (citation omitted). In response to Defendants' motion for summary judgment, Plaintiff argues only that "[t]here is a jury question, to be resolved by a preponderance of the evidence, as to whether McClinton committed at least the Class C felony of manslaughter." ECF No. 44, at 11. Plaintiff does not explain what facts are in dispute or how those facts preclude summary judgment on this particular claim; instead, Plaintiff offers only sparse conclusory allegations without any explanation of those allegations' legal significance. *See Quinn v. St. Louis Cnty.*, 653 F.3d 745, 752 (8th Cir. 2011). This is insufficient to defeat summary judgment, and therefore, the Court finds that summary judgment in favor of Defendant McClinton is appropriate on this claim.

The final individual-capacity claim against Defendant McClinton that the Court must address is Plaintiff's state-law tort claim for outrageous conduct. Defendants argue that summary judgment is appropriate on this claim because Plaintiff "makes no allegation, and can present no proof, that either of the Defendants intended to inflict emotional distress upon her decedent." ECF No. 36, at 10. Further, Defendants argue, Plaintiff has not alleged "how her decedent suffered mental distress as a result of the allegedly outrageous conduct by the[ ]Defendants." ECF No. 36, at 10. Plaintiff does not respond to this argument or otherwise explain why summary judgment is inappropriate, *see* ECF No. 44, and therefore, the Court finds that Defendant McClinton is entitled to summary judgment on this claim.

### 2. Defendant Loe

The Court finds that summary judgment is appropriate on each of Plaintiff's claims against Defendant Loe in his individual capacity. Insofar as Plaintiff brings a Fourth Amendment claim

against Defendant Loe pursuant to § 1983, that claim fails because Defendant Loe was not personally involved in the at-issue shooting. "To prevail on a § 1983 claim, a plaintiff must show each individual defendant's personal involvement in the alleged violation." *White v. Jackson*, 865 F.3d 1064, 1081 (8th Cir. 2017). Where a plaintiff presents no evidence that a defendant was personally involved in the at-issue show of force, qualified immunity is appropriate. *See id.* "When the undisputed record establishes that a defendant who is sued in his individual capacity under § 1983 was not personally or directly involved in the alleged constitutional violation, then that defendant is entitled to the entry of summary judgment in his favor on the basis of the qualified immunity doctrine." *Strinni v. Mehlville Fire Prot. Dist.*, 681 F. Supp. 2d 1052, 1082 (E.D. Mo. Jan. 6, 2010).

Here, Plaintiff does not allege how Defendant Loe was personally involved in the November 21, 2018 shooting, stating only that, on the night of the shooting, Defendant McClinton was acting "under the supervision" of Defendant Loe. ECF No. 2, at 3. In their motion for summary judgment, Defendants contend that Defendant Loe is entitled to qualified immunity because he was not at the scene of the shooting but was, instead, "recuperating from back surgery" and "not even able to go to the incident scene after the event." ECF No. 36, at 7. Defendants note that Defendant Loe was only involved insofar as he "empower[ed] his subordinates to notify State Police, who conducted a full and independent investigation of the matter prior to referring the case to the state prosecutor." ECF No. 36, at 7. Plaintiff does not dispute this, responding by alleging only that "Loe (and the county) failed to properly and adequately train officers with regard to, among other things, encounters with citizens and use of force." ECF No. 44, at 11. However, such an allegation does not explain how Defendant Loe was personally involved in wrongdoing,

14

as is required for a § 1983 claim. Thus, Defendant Loe is entitled to qualified immunity. *See Strinni*, 681 F. Supp. 2d at 1082.[9]

### B. Official Capacity Claims

The Court finds that summary judgment in favor of Defendants is also appropriate on Plaintiff's official capacity claims. "Official-capacity suits typically involve either allegedly unconstitutional state policies or unconstitutional actions taken by state agents possessing final authority over a particular decision." *Nix v. Norman*, 879 F.2d 429, 431 (8th Cir. 1989). Claims against state agents in their official capacity "require proof that a policy or custom of the entity violated the plaintiff's rights." *Robinson v. Runion*, 2018 WL 4214193, at *2 (W.D. Ark. Aug. 7, 2018). "A 'policy' is an official policy, a deliberate choice of a guiding principal [sic] or procedure made by the municipal official who has final authority regarding such matters," while "[a] 'custom' is a persistent widespread pattern of unconstitutional conduct which officials have notice and subsequently react with deliberate indifference or tacit authorization." *Arnold v. Corizon, Inc.*, No. 1:15-cv-62, 2015 WL 4206307, at *2 (E.D. Mo. July 10, 2015). A plaintiff bringing an official-capacity claim must set forth more than conclusory claims that the defendants acted according to an unspecified policy or custom. *Robinson*, 2018 WL 4214193, at *2.

Here, Plaintiff alleges a multitude of unconstitutional failures that Defendant Columbia County should be held liable for, and all of Plaintiff's allegations relate to Defendant Columbia County's hiring, training, supervising, and disciplinary practices. ECF No. 2, at 4-6. However, Plaintiff does not direct the Court to any official Columbia County policy that promulgates these allegedly unconstitutional practices. *See* ECF No. 36, at 12 ("Plaintiff has no proof of any unconstitutional county policy or custom, . . . no proof to show that an unconstitutional county

---

[9]Summary judgment is therefore also appropriate on Plaintiff's ACRA claim against Defendant Loe in his individual capacity. *See Estate of Brown*, 2022 WL 963664, at *7.

15

policy or custom was 'the moving force' behind an underlying violation of his rights."). Instead, Plaintiff sets forth only generalized allegations that Defendant Columbia County failed to do various things that, in Plaintiff's view, would have prevented McDaniel's injuries and death. ECF No. 2, at 5-6. Additionally, in her response in opposition to Defendants' motion for summary judgment, Plaintiff altogether omitted any discussion of Defendant Columbia County's liability. *See* ECF No. 44, at 11-12 (labeling analysis as "Liability of Sheriff Loe and Columbia County" but failing to substantively discuss Columbia County's liability). No rational trier of fact could find for Plaintiff on her official capacity claims against Defendant Columbia County and summary judgment in the County's favor is appropriate. *See Banks*, 829 F.3d at 665.

As a final matter, in Plaintiff's brief in opposition to Defendants' motion for summary judgment, she discusses her official capacity claim insofar as it is against Defendant Loe in his official capacity. ECF No. 44, at 11-12. In her complaint, Plaintiff also names Defendant McClinton in his official capacity. ECF No. 2. Insofar as Plaintiff brings official-capacity claims against Defendants Loe and McClinton, both defendants are entitled to summary judgment. *See Kelly v. City of Omaha*, 813 F.3d 1070, 1075 (8th Cir. 2016) (explaining that where a plaintiff sues public employees in their official capacities, that plaintiff sues *only* the public employer and "must establish the municipality's liability for the alleged conduct").[10]

### III. CONCLUSION

For the foregoing reasons, the Court finds that Defendants' motion for summary judgment (ECF No. 35) should be and hereby is **GRANTED IN PART** and **DENIED IN PART**. More specifically, Defendants are entitled to summary judgment on all of Plaintiff's claims, except

---

[10]The Court also notes that, according to Defendants, Defendant Loe has since retired and is no longer employed by Defendant Columbia County.

insofar as Plaintiff alleges a Fourth Amendment claim and an ACRA claim against Defendant McClinton in his individual capacity. The Court finds that these two claims should proceed.

**IT IS SO ORDERED**, this 21st day of March, 2023.

                                                /s/ Susan O. Hickey
                                                Susan O. Hickey
                                                Chief United States District Judge